UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



Candice Lue,

           Plaintiff,

—v—

JPMorgan Chase & Co., *et al.*,

           Defendants.

16-CV-3207 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiff Candice Lue ("Plaintiff" or "Lue") alleges various forms of discrimination, harassment, and retaliation based on her race and stemming from her employment with Defendant JPMorgan Chase & Co. ("Chase"). Defendants move the Court for summary judgment. Upon the Court's evaluation of the evidence presented, Defendants' motion for summary judgment is GRANTED.

## I. BACKGROUND

### A. Procedural Background

On April 29, 2016, Plaintiff commenced the action. Dkt. No. 1. On August 1, 2016, Defendants answered. Dkt. No. 35. Discovery closed on March 31, 2017. Dkt. No. 71. On May 9, 2017, Defendants moved for summary judgment. *See* Dkt. Nos. 89-100. After receiving the Court's approval of two requests for extensions of time to oppose Defendants' motion for summary judgment, *see* Dkt. Nos. 103, 105, Plaintiff ultimately submitted opposition papers totaling roughly 800 pages, including a 198-page Memorandum of Law. The Court struck the submissions as "overly burdensome," and ordered Plaintiff to resubmit revised submissions within certain page limits. *See* Dkt. No. 120. Plaintiff petitioned the Court to reconsider; the Court denied this request, but extended Plaintiff's deadline for her revised submissions. *See* Dkt.

1

No. 125. The Court subsequently provided further clarity on the exact page limits to which Plaintiff's submissions must abide, and extended her filing deadline once more. *See* Dkt. No. 127. Instead, Plaintiff appealed to the Second Circuit, seeking a writ of mandamus and an emergency stay. *See* No. 17-2751, Dkt. No. 1 (2d Cir. Sept. 1, 2017). The Court of Appeals denied Plaintiff's motion on November 6, 2017. *See* No. 17-2751, Dkt. Nos. 22-23 (2d Cir.).

Subsequently, on November 20, 2017 the Court ordered Plaintiff "to submit her opposition to Defendants' motions for summary judgment within the Court's prescribed page limits by December 1, 2017 or the Court will consider the motions unopposed and fully submitted." Dkt. No. 131 (emphasis in original). Plaintiff responded on November 28, 2017, deeming the Court's November 20 Order a "farce" and the Second Circuit's November 6 Orders as having been issued "in collusion" with the District Court. Dkt. No. 132.

On December 4, 2017, the Court issued an order reciting the lengthy history of Plaintiff's unwillingness to comply with the Court's orders and giving Plaintiff "until December 29, 2017 to submit her opposition within the prescribed page limits." *See* Dkt. No. 134 at 2. The Court warned that "[t]his constitutes Plaintiff's last chance, and the Court will deem the motion unopposed and fully submitted if nothing is received on or before" that date. *Id.*[1]

Plaintiff submitted two responses, both of which lodge various procedural complaints or focus on Defendants' alleged perjury, but neither of which can be reasonably construed as an opposition to Defendants' motions for summary judgment. *See* Dkt. Nos. 135 & 136. Defendants then filed a letter asking the Court to deem the motion unopposed and fully submitted and Plaintiff filed a response that again asked for her original opposition to summary judgment to be restored to the docket, but which did not attempt to comply with the Court's repeated orders. Dkt. Nos. 137 & 138.

Accordingly, the Court now deems the motion unopposed and fully submitted.

---

[1] While the order mistakenly listed both December 29 and December 15, 2017 as Plaintiff's deadline, this discrepancy is immaterial given that Plaintiff failed to meet either deadline.

**B. Factual Summary**

On April 29, 2016, Plaintiff filed a 234-page Amended Complaint naming as Defendants her former employer, JPMorgan Chase, as well as a number of JPMorgan Chase employees. *See generally* Amended Complaint ("Am. Compl."), Dkt. No. 33. While Plaintiff, a Black woman, *see* Am. Compl. ¶ 4, pleaded ten causes of action, the crux of Plaintiff's complaint stems from her supervisor's assignment to her of various tasks she found demeaning or humiliating, and which she believed reflected her status as the "only Black Analyst" in the Counterparty Risk Group, the team within Chase on which she served. *See* Am. Compl. ¶¶ 4-5.

Because this motion is deemed unopposed, *see supra* Part I.A., the Court does not have the benefit of Plaintiff's responses to Defendants' Statement of Undisputed Material Facts Under Local Civil Rule 56.1. *See* Dkt. No. 90 [hereafter, "Defs. 56.1"]. Even still, "the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). "It must be satisfied that the citation to evidence in the record supports the assertion." *Id.* However, a *pro se* plaintiff may not rely solely on her complaint to defeat a summary judgment motion. *See Champion v. Artuz*, 76 F.3d 483, 485 (2d Cir. 1996) (per curiam). Given this, the Court adopts as undisputed the following material facts only because each statement is also supported by an appropriate citation to evidence in the record.

**1. Plaintiff's Employment Background**

Plaintiff began her employment with Chase on August 20, 2012 as an Energy Confirmations Drafting Analyst ("Drafting Analyst") in the Commodities Operations Department of the Commercial Investment Bank at Chase. Defs. 56.1 ¶ 2. In this role, except for the first few months of her employment, Plaintiff reported to Defendant Michelle Sullivan, who in turn reported to Defendant Chris Liasis. Defs. 56.1 ¶ 3. While Plaintiff served in that role, she received three performance reviews from Sullivan or Liasis. Defs. 56.1 ¶¶ 4-6. In each review, Plaintiff received an "M" for "Meets Expectations," although she was informed that her

"communication style needs continued refinement," and that her "[r]eaction to constructive feedback [] should be focused [on] as a key area of improvement." *Id.*

On or about November 10, 2014, following the sale of Chase's commodities business and the closing of her department, Plaintiff was transferred to the role of Credit Reporting Risk Analyst ("Reporting Analyst") in the Counterparty Risk Group ("CRG") of JPMorgan Asset Management. Defs. 56.1 ¶ 7. In this position, Lue reported to Defendant Fidelia Shillingford, who, in turn, reported to Defendant Alex Khavin. Defs. 56.1 ¶ 8. Shillingford is a Black woman. *Id.*

In or about December 2014, Sullivan and Shillingford conducted Plaintiff's year-end performance review, with each manager providing feedback. Defs. 56.1 ¶ 9. Plaintiff received an "M-" for "Low Meets Expectations" from Sullivan for her time as a Drafting Analyst. *Id.* Plaintiff responded by sending Human Resources ("HR") a five-page response, calling Sullivan's feedback "malicious," "mendacious," and "defamatory," and proceeded to file an official complaint against Sullivan with HR. Defs. 56.1 ¶¶ 10-11. HR conducted an investigation into Plaintiff's claims and concluded that they were unfounded and that Sullivan was able to substantiate the feedback she gave Plaintiff on the performance review. Defs. 56.1 ¶¶ 12-14. Chase informed Plaintiff of the appeals process, but she declined to pursue an appeal. Defs. 56.1 ¶ 15.

### 2. Plaintiff's Objections to Performing Certain Tasks

As a Reporting Analyst, Plaintiff's job description included "[c]ontributing to team-wide efforts such as risk assessment methodology enhancements, portfolio-wide reviews and preparing management presentations." Am. Compl., Ex. H. Khavin assigned Plaintiff the task of collecting and distributing materials, as well as taking minutes, for the monthly governance meetings (collectively, the "Tasks"). Defs. 56.1 ¶ 17. As a result, Plaintiff met with Shillingford to complain that Khavin was treating her "as if she was the help, as if this is 1910." *Id.*

Prior to Plaintiff's arrival in the CRG, Baruch Horowitz, a White man and a senior Associate (a higher rank than Plaintiff's role of Analyst), had performed the Tasks exclusively. Defs. 56.1 ¶ 18. During Horowitz's absence for disability leave in 2014, Khavin had each CRG member bring and distribute their own materials, and temporarily rotated the task of taking minutes among the CRG analysts and associates. *Id.* However, when Plaintiff was hired, in an effort to make the Governance Meeting more efficient, Khavin asked her to collect, consolidate, and distribute the meeting materials as Horowitz had done. Declaration of Alex Khavin ("Khavin Decl.") ¶ 14.

After Plaintiff complained to Shillingford about the Tasks, Shillingford conferred with Khavin and they agreed to temporarily rotate the Tasks among analysts and associates in order to accommodate Plaintiff and give her time to get up to speed in her new role. Defs. 56.1 ¶ 19. At the April 2015 Governance Meeting, Khavin asked the group to send their materials for the May meeting to Plaintiff, who had been assigned the Tasks that month. Defs. 56.1 ¶ 21. In response, Plaintiff got up and walked out of the meeting. *Id.* When Khavin spoke with Plaintiff to find out why she walked out, Plaintiff stated it was because she had been assigned the Tasks, which she found to be demeaning. Defs. 56.1 ¶ 22. Khavin responded that the Tasks were part of Plaintiff's role, were extremely important, added value to the group, and that Plaintiff could enlist the help of the group's administrative assistant. Khavin Decl. ¶ 22. On April 24, 2015, Plaintiff sent an email to Shillingford complaining that Khavin was demeaning her by assigning her the Tasks and asking, "Am I the help? Is this 1910?" Defs. 56.1 ¶ 23.

In May, the same pattern repeated. When one member of the CRG sent Plaintiff his materials prior to the May Governance Meeting, Plaintiff responded by emailing the entire group, asking them to handle their own materials and writing "I find it unfair and demeaning that the task of printing, sorting, organizing, stapling, sending out and lugging YOUR presentation materials to the meetings is placed on me." Defs. 56.1 ¶ 25. In response, when Khavin reiterated her expectations of Plaintiff that "there will be one package for the monthly meeting which will

be put together by you, and sent out ahead of the meeting," Plaintiff responded that she felt it was demeaning and asked "Am I the help? Is this 1910?" Defs. 56.1 ¶ 26-27.

### 3. HR's Investigation into Plaintiff's Objections

On May 26, 2015, Plaintiff sent a meeting invitation to Shillingford to discuss the "lack of trust and confidence I have in your management." Defs. 56.1 ¶ 24. Shillingford forwarded the email to HR. *Id.* Based on the email Shillingford forwarded, HR contacted Plaintiff to schedule a time to discuss her concerns. Defs. 56.1 ¶ 28. When Plaintiff responded that she considered herself to be a victim of discrimination, HR requested that Defendant John Vega, an Executive Director in Chase's Employee Relations department, conduct an investigation into Plaintiff's concerns. Defs. 56.1 ¶¶ 29-30. Vega concluded that Plaintiff's allegations were unfounded and that there was no evidence of discriminatory animus. Defs. 56.1 ¶ 33. Among other things, Vega found that anyone in Plaintiff's role was responsible for the Tasks, and that by assigning Plaintiff the Tasks, her supervisors had not changed her role. *Id.* Vega informed Plaintiff of his findings on July 29, 2015, and the investigation was closed. *Id.*

### 4. Plaintiff's Performance Improvement Plan, Written Warning, and Termination

On July 30, 2015, Shillingford and Defendant Helen DuBowy, HR Business Partner to Asset Management Risk, conducted Plaintiff's mid-year performance review. Defs. 56.1 ¶ 34. Shillingford had asked DuBowy to sit in on the review because of Vega's investigation and because she thought it was important to have an HR representative present. *Id.* At the performance review, Plaintiff was placed on a performance improvement plan ("PIP") and informed that she was expected to perform all tasks assigned to her and to improve her communication style. Defs. 56.1 ¶ 35. Plaintiff refused to sign the PIP. Declaration of Fidelia Shillingford ("Shillingford Decl."), Dkt. No. 93, Ex. F.

On August 26, 2015, Shillingford asked Plaintiff to remind the group members to save their documents for the August Governance Meeting in a shared folder so that Plaintiff could

6

perform the Tasks. Defs. 56.1 ¶ 38. Plaintiff simply responded "I have no further comments," and did not print the materials for the meeting. Defs. 56.1 ¶¶ 38-39.

Again, on September 23, 2015, Shillingford asked Plaintiff to bring copies of three items to the September Governance Meeting, but Plaintiff stated that she would print only one of the documents. Defs. 56.1 ¶ 40. Shillingford emailed Plaintiff in response that "[it] is rather disrespectful and insubordinate for you to refuse to perform a responsibility assigned by your immediate manager. This is one of my responsibilities which I am off boarding to you given my increasing workload and it's my expectation[] that you fully pick this responsibility [up] going forward." *Id.* (citing Shillingford Decl., Ex. J). Plaintiff responded that "this is stemming from the racial discrimination charge I raised with HR." Defs. 56.1 ¶ 41.

Following these incidents, Plaintiff was issued a written warning on September 24, 2015, in which Shillingford made clear that she expected Plaintiff to "perform the job responsibilities for which she was hired," including "to print all materials for our monthly team meeting and provide copies for each team member." Shillingford Decl., Ex. K. Plaintiff responded by emailing Shillingford, accusing her of being "the enabler, the facilitator, the coordinator and the enforcer of the second class treatment which originated from Alex Khavin." Shillingford Decl., Ex. L. After another exchange of tense emails between Plaintiff and Shillingford, Shillingford forwarded the emails to HR, along with a note indicating her impression that the environment "has become toxic and inoperable" and that her "primary focus has shifted to managing my interactions and the work has become secondary." Shillingford Decl., Ex. M.

After Plaintiff again refused to perform the Tasks for the October 2015 Governance Meeting, Defs. 56.1 ¶ 45, and refused to coordinate with another analyst to complete the Tasks for the December Governance Meeting, Defs. 56.1 ¶ 47, Shillingford decided that Plaintiff's employment should be terminated. Defs. 56.1 ¶ 49.

On January 6, 2016, DuBowy signed off on a recommendation to terminate the Plaintiff, which cited both the PIP and written warning as including "issues on refusing to perform assigned tasks [as] well as a lack of professionalism including inappropriate tone of emails and

7

verbal communication. Declaration of Helen DuBowy, Ex. C. The recommendation to terminate concluded that "[d]espite numerous conversations that Candice has had with Employee Relations and management, she still [] has not had sustained improvement in these areas." *Id.* Plaintiff was terminated that day. Defs. 56.1 ¶ 51.

## II. LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (internal quotation marks and alterations omitted). If the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial" and summary judgment should be granted to the moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).

It is the initial burden of the movant to present evidence on each material element of its claim or defense and demonstrate that it is entitled to relief as a matter of law. *Vt. Teddy Bear Co.*, 373 F.3d at 244. When a motion for summary judgment is unopposed, as here, courts may not grant the motion "without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Id.* at 244, 246. Moreover, as stated above, in determining whether the movant has met this burden, the court may not rely solely on the movant's 56.1 statement; rather, the court must be satisfied that the citation to the record evidence supports the assertion. *Id.* at 244.

In this case, the Court affords additional care to Plaintiff's position for two reasons. First, as a *pro se* litigant, Plaintiff is afforded "special solicitude" under Second Circuit law. *See Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988). A *pro se* plaintiff is entitled to have her pleadings held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v.*

*Kerner*, 404 U.S. 519, 520 (1971). The pleadings must be read liberally and interpreted to "raise the strongest arguments that they suggest," *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), however the plaintiff's *pro se* status does not relieve her of the usual requirements of summary judgment, specifically the obligation that she come forward with evidence demonstrating a genuine dispute regarding material fact. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Plaintiff was served with the notice required by Local Rule 56.2, informing her of the nature of a summary judgment motion and the manner in which it could be opposed, and warning that failure to respond may lead the court to "accept defendants' factual assertions as true." Dkt. No. 100.

Second, the Second Circuit has instructed that trial courts must be cautious about granting summary judgment to an employer when its intent is at issue. *See Gallo v. Prudential Residential Servs., LP*, 22 F.3d 1219, 1224 (2d Cir. 1994). Because the employer rarely leaves direct evidence of its discriminatory or retaliatory intent, courts must carefully search for circumstantial proof. *Id.* However, it is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

Ultimately, the district court may grant an unopposed motion for summary judgment against a *pro se* plaintiff if: (1) the *pro se* plaintiff has received adequate notice that failure to file a proper opposition may result in dismissal of the case; and (2) the Court is satisfied that "the facts as to which there is no genuine dispute 'show that the moving party is entitled to a judgment as a matter of law.'" *See Champion*, 76 F.3d at 485-86 (quoting Fed. R. Civ. P. 56(c)).

## III. DISCUSSION

Plaintiff pleads ten causes of action in her complaint, all of which are styled as violations of Title VII, 42 U.S.C. §§ 2000e *et seq.* and 42 U.S.C. § 1981, but some of which are more appropriately construed as raising other claims. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006) (per curiam) (requiring courts to liberally construe a *pro se* party's

pleadings to raise the strongest argument they suggest). The Court addresses Plaintiff's Title VII and § 1981 claims first.

### A. Title VII and § 1981

As an initial matter, "[m]ost of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981." *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004). The differences that do exist are inapplicable here, except insofar as Plaintiff attempts to hold the individual Defendants liable under Title VII, which is not cognizable. *Id.* at 225-227 (explaining the differences). As a result, as further explained below, for the same reasons that Defendant Chase is entitled to summary judgment in the face of Plaintiff's Title VII allegations, so too are all of the individual Defendants under § 1981.

The central problem with Plaintiff's allegations, in light of the undisputed evidence described above, is that she fails to offer sufficient proof of racial motive.

Under Title VII, to withstand a motion for summary judgment, a discrimination plaintiff must satisfy the burden-shifting analysis set forth in *McDonnell Douglas*. *McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). A plaintiff first bears the minimal burden of establishing a *prima facie* case of discrimination. If she is so able, she is then aided by a presumption of discrimination unless the defendant proffers a "legitimate, nondiscriminatory reason" for the adverse employment action, in which event the presumption disappears and the plaintiff bears the greater burden of proving that the employer's proffered reason was mere pretext for discrimination. *Id.*

As explained below, applying this framework to Plaintiff's Title VII claims shows that she cannot satisfy the minimal burden of establishing a *prima facie* case on the basis of the undisputed facts. But assuming *arguendo* she were able to meet that standard, Defendants also

offer a legitimate, nondiscriminatory reason for terminating Plaintiff's employment that Plaintiff cannot show is pretextual.

### 1. Plaintiff Fails To Establish a *Prima Facie* Case of Discrimination

To establish a *prima facie* case of discrimination, Plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) that action occurred under circumstances giving rise to an inference of discriminatory intent. *McDonnell Douglas*, 411 U.S. at 802. Plaintiff is able to satisfy the first three elements. On the fourth element, Plaintiff may satisfy this burden showing that she was "similarly situated in all material respects" to the individuals against whom she would have the court compare her. *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997).

Here, Plaintiff draws a comparison to her non-Black colleagues at the Associate or Analyst level in her group at work. But "[i]n addition to identifying similarly situated employees who are subject to the same evaluation and discipline standards, a plaintiff must also show that those employees engaged in acts of comparable seriousness but were not punished as severely as plaintiff." *Risco v. McHugh*, 868 F. Supp. 2d 75, 100-01 (S.D.N.Y. 2012). Plaintiff offers no evidence that similarly situated employees who also similarly refused to handle specific tasks, or who communicated with their supervisors in a similar manner, were treated more favorably. And while it is true that Plaintiff seems to have been specifically asked to handle the Tasks, a jury could not reasonably infer from this fact alone that the request was attributable to racial discrimination. As the undisputed facts show, Khavin had previously assigned this same task to Baruch Horowitz, a White man with a higher job title than Plaintiff, suggesting that the assignment of the Tasks to Plaintiff was unrelated to her race.

Similarly, Plaintiff claims that she was treated differently from non-Black analysts in being required to ask for permission before working from home and in having her requests to work from home to care for her mother denied. *See* Am. Compl. ¶ 19. However, the undisputed evidence showed that Horowitz and other analysts had to ask for permission to work from home,

11

and that this was consistent with the group's policy. *See* Declaration of Baruch Horowitz, Dkt. No. 99, ¶ 7; Shillingford Decl. ¶¶ 13-14 & Ex. C. Plaintiff offers no specific counter-example that raises a genuine dispute.

Plaintiff offers no specific statements that any individuals made suggesting the assignment was racially motivated. Conclusory statements by Plaintiff that she was being treated as a "house slave" and given "demeaning" tasks because of her race are insufficient without further proof. *See Risco*, 868 F. Supp. 2d at 99 ("A plaintiff's self-serving statement, without direct or circumstantial evidence to support the charge, is also insufficient."); *accord Olorde v. Streamingedge, Inc.*, No. 11-CV-6934 (GBD)(AJP), 2014 WL 1689039, at *14 (S.D.N.Y. Apr. 29, 2014), *report and recommendation adopted*, 2014 WL 3974581 (S.D.N.Y. Aug. 13, 2014) ("[Plaintiff] may have a legitimate complaint that he was overworked and required to perform personal tasks for [his boss], but there is no evidence that this was a form of discrimination."). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

Plaintiff's complaint suggests many disagreements with her supervisors' evaluation of her behavior and performance, both in her time as both a Drafting Analyst and as a Reporting Analyst, but as a matter of law this disagreement is not evidence of discriminatory intent. *Jimoh v. Ernst & Young*, 908 F. Supp. 220, 226 (S.D.N.Y. 1995) (citing *Dister v. Continental Grp., Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988)). "While plaintiff argues that her behavior during the incidents cited by defendants was appropriate and justified, a plaintiff's factual disagreement with the validity of an employer's non-discriminatory reason for an adverse employment decision does not, by itself, create a triable issue of fact." *Fleming v. MaxMara USA*, 644 F. Supp. 2d 247, 266 (E.D.N.Y. 2009), *aff'd*, 371 F. App'x 115, 117-18 (2d Cir. 2010). Even accepting Plaintiff's view as correct, there is no evidence in the record to support a finding that Sullivan, Liasis, Shillingford, or Khavin were motivated by any racial animus in exaggerating or

lying in evaluating Plaintiff's performance. *See Grillo v. N.Y. City Transit Auth.*, 291 F.3d 231, 235 (2d Cir. 2002).

Finally, although the Supreme Court has soundly "rejected any conclusive presumption" that an employer will not discriminate against members of their own race, *see Feingold v. New York*, 366 F.3d 138, 155 (2d Cir. 2004) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998)), the fact that Shillingford is also a Black woman can be seen to undermine any inference of discriminatory animus. *See, e.g., Baguer v. Spanish Broad. Sys., Inc.*, 04-CV-8393, 2010 WL 2813632, at *11 (S.D.N.Y. July 12, 2010), *aff'd*, 423 F. App'x 102 (2d Cir. 2011); *Drummond v. IPC Int'l, Inc.*, 400 F. Supp. 2d 521, 532 (E.D.N.Y. 2005); *Olorode*, 2014 WL 1689039, at *16. Shillingford is also the person who made both the decision to hire Plaintiff and the decision to fire her, further undermining any possible inference of discrimination. *See Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997).

In sum, none of Plaintiff's allegations raises an inference of discriminatory intent sufficient to establish a *prima facie* case under Title VII or § 1981. *Cf. Jeune v. City of N.Y.*, 11-CV-7424, 2014 WL 83851, at *5 (S.D.N.Y. Jan. 9, 2014) ("The only evidence [plaintiff] proffers in support of th[e] assertion [that he was treated differently], however, is his own conclusory testimony that [defendant] 'didn't…[treat] the white officers or the Latin officers' in a similar fashion, and that he '[didn't] think [defendant] would' extend the hours of someone whose child was sick if the person was 'of her own race.' But this testimony lacks the detail necessary to support an inference of discrimination." (record citations omitted)); *accord Moore v. Kingsbrook Jewish Med. Ctr.*, No. 11-CV-3625, 2013 WL 3968748, at *7 (E.D.N.Y. July 30, 2013); *KarimSeidou v. Hosp. of St. Raphael*, No. 09-CV-51, 2012 WL 6628886, at *5 (D. Conn. Dec. 19, 2012). Plaintiff cannot prove discrimination by speculation and by reliance on her own subjective beliefs.

## 2. Even if Plaintiff Had Established a *Prima Facie* Case, Defendants Offer Non-Discriminatory Explanations Plaintiff Fails to Prove Are Pretextual

Even if Plaintiff were able to establish her *prima facie* case of discrimination, Defendants have proffered a "legitimate, nondiscriminatory reason" for the adverse employment action, and Plaintiff cannot meet her burden that these reasons were pretextual. *McPherson*, 457 F.3d at 215.

Plaintiff was terminated for unsatisfactory performance, continued failure to perform her assigned tasks, and for a lack of professionalism, including using an inappropriate tone in emails and verbal communication; each of these issues was identified in her PIP and in a written warning. Defs. 56.1 ¶ 50. As the Defendants note, these are all legitimate reasons for termination. Mot. at 6 (citing *Nieves v. Angelo, Gordon & Co.*, 341 F. App'x 676, 679 (2d Cir. 2009) (insubordination and failure to complete assigned tasks were legitimate reasons for termination) and *Gill v. Mt. Sinai Hosp.*, 160 F. App'x 43, 44 (2d Cir. 2005) (failure to complete job duties, inability to take directions, and confrontational and unprofessional behavior were legitimate business reasons for termination)). Given the many instances of Plaintiff's refusal to follow directions from her supervisor and hostile tone in communications highlighted above, the Court finds Defendants' proffered justifications are well-supported.

For the same reasons that Plaintiff is unable to establish an inference of discriminatory intent, she is also unable to carry her burden that Defendants' reasons were pretextual. The Court does not second-guess an employer's business decisions absent specific evidence of an improper motive, *see Scaria v. Rubin*, 117 F.3d 652, 654-55 (2d Cir. 1997) (per curiam), and Plaintiff fails to present such evidence. As discussed above, Plaintiff offers no valid comparator. Her White predecessor was exclusively responsible for the same Tasks and had to obtain the same permissions to work from home. Shillingford, who is Black, made the decision to both hire and fire Plaintiff. And Plaintiff presents no evidence – such as racist comments or other discriminatory behavior – that anyone involved in evaluating her performance, investigating her complaints, or making employment decisions about her harbored a racial animus.

A plaintiff must "produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [discrimination] was the real reason for the [adverse employment action]." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996) (internal quotation marks and citation omitted). Plaintiff fails to meet this burden.

### 3. Plaintiff's Evidentiary Deficiencies Extend to All of Her Title VII Causes of Action

Plaintiff's first cause of action, for "Unlawful Discrimination on the Basis of Race" in violation of Title VII and § 1981, is what is principally analyzed above, but the same deficiencies the Court previously identified – specifically the absence of evidence of racial motive – apply to many of her other causes of action as well.

Plaintiff's sixth cause of action, styled as "Intentional Infliction of Career Regression and Career Stagnation on the Basis of Race," is primarily based on her allegations that Defendants Liasis and Sullivan undermined her work, gave her negative feedback in her performance review, and failed to promote her. *See* Am. Compl. ¶¶ 142-67. Defendants present nondiscrimnatory explanations for each decision or action. *See* Mot. at 17 (citing *Scaria*, 117 F.3d at 654 (disclaiming reexamination of a business decision absent specific evidence of discriminatory motive)). Plaintiff presents no evidence of racial discrimination apart from her own speculation, and whatever disagreements she may have had with their decisions are not evidence of discriminatory intent. *Jimoh*, 908 F. Supp. at 226 (S.D.N.Y. 1995) (citing *Dister*, 859 F.2d at 1116).

Plaintiff's eighth and ninth causes of action focus on Plaintiff's claim that Khavin switched who her manager would be from a White woman to Shillingford, who is Black, after hiring Plaintiff, in an effort to segregate the Black members of the team and to use Shillingford as cover to enforce Khavin's bigotry. *See* Am. Compl. ¶¶ 4, 178-93. Defendants have presented undisputed evidence that Khavin made the decision that Shillingford would supervise the new hire before Plaintiff was hired, and Plaintiff was explicitly told this both verbally and in her offer

15

letter. *See* Khavin Decl. ¶¶ 5-6; Shillingford Decl. ¶¶ 4-5 & Ex. A. Again, Plaintiff raises no genuine factual dispute.

### a) Retaliation

Plaintiff's second cause of action alleges unlawful retaliation under Title VII and § 1981. Retaliation claims also receive the burden-shifting analysis from *McDonnell Douglas* set forth above, but a plaintiff establishes a *prima facie* case by showing that: (1) she was engaged in a protected activity of which her employer was aware; (2) she suffered some disadvantageous employment action; and (3) there was a causal connection between the protected activity and the adverse employment decision. *See Van Zant*, 80 F.3d at 714. "The causal connection can be established directly through evidence of retaliatory animus directed at plaintiff by defendant, or indirectly by showing either that other employees engaged in similar conduct were given more favorable treatment or that the adverse action closely followed the protected activity." *Dean v. Westchester Cty. Dist. Attorney's Office*, 119 F. Supp. 2d 424, 432 (S.D.N.Y. 2000) (citing *Johnson v. Palma*, 931 F.3d 203, 207 (2d Cir. 1991)).

Assuming *arguendo* that Plaintiff could establish her *prima facie* case, she cannot raise a triable issue of pretext in response to Defendants' contention that the adverse employment action was nonretaliatory. First, in line with the deficiencies described above, Plaintiff solely relies on her subjective beliefs and conclusory allegations, and not on specific facts, that Chase had a retaliatory motive. *See* Am. Compl. ¶¶ 99-109. This does not satisfy Plaintiff's burden. *See, e.g., Ennis v. Sonitrol Mgmt. Corp.*, No. 02-CV-9070 (TPG), 2006 WL 177173, at *18 (S.D.N.Y. Jan. 24, 2006) (granting defendants summary judgment because "[t]here is no evidence that the reasons defendants proffered for plaintiff's discharge are untrue or are merely pretext for a retaliatory motive."). That Plaintiff has a different assessment of her work performance from Defendants is insufficient to establish pretext; she would need to offer evidence that Defendants' proffered justification was not actually the reason she was fired. *See Stevens v. New York*, No. 09-CV-5237 (CM), 2011 WL 3055370, at *7 (S.D.N.Y. July 20, 2011).

Second, to the extent that Plaintiff relies on the temporal proximity between when she filed her charge with the Equal Employment Opportunity Commission (EEOC) and when she was placed on a PIP, issued a written warning, and ultimately terminated, *see, e.g.*, Am. Compl. ¶ 98, this evidence is insufficient. Temporal proximity in and of itself is generally "insufficient to satisfy [a plaintiff's] burden to bring forward some evidence of pretext" for retaliation. *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010). Moreover, negative feedback for the exact behavior that led to Plaintiff's termination – namely, her refusal to complete the Tasks – preceded her August 13, 2015 filing with the EEOC. *See* Am. Compl. ¶ 86 (describing the filing of the EEOC charge); Defs. 56.1 ¶¶ 21-36 (discussing Plaintiff's actions between April and July 2015). "Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001).

In sum, based on the undisputed facts, Plaintiff's claim of retaliation fails as a matter of law.

### b) Harassment / Hostile Work Environment

Plaintiff's fourth cause of action alleges that she was harassed based on her race, first by Sullivan, and later by Shillingford and Khavin. Am. Compl. ¶¶ 125-33. The Court construes this claim as one for hostile work environment. *See Triestman*, 470 F.3d at 472. To establish a hostile work environment claim, a plaintiff must first show that the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Alfano v. Costello*, 294 F.3d 365, 373-74 (2d Cir. 2002) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Plaintiff alleges that Sullivan "fought tooth and nail" to have her comments be a part of Plaintiff's 2014 year-end performance review, even though Plaintiff had transferred teams. Am. Compl. ¶ 133. Even if this were "harassment" severe enough to create an abusive working environment, Defendants have presented undisputed facts that it was company practice that the

primary feedback and rating be provided by the manager under whose supervision the employee had spent the majority of the year, and Sullivan was acting at the directions of HR. *See* Declaration of Michele Sullivan, ¶ 9, Ex. B. Plaintiff's allegations against Khavin and Shillingford on this cause of action simply repeat the previously dismissed claims she made about the Tasks. Plaintiff does not raise a triable issue of fact with respect to their alleged harassment of her either.

### c) Aiding and Abetting

Plaintiff's third and fifth causes of action are two sides of the same coin as each alleges that various supervisors or HR representatives facilitated or failed to prevent the above-alleged violations. Her third cause of action – "Aiding and Abetting" Title VII violations – is not a viable claim under Title VII or § 1981. *See, e.g., Long v. Marubeni Am. Corp.*, No. 05-CV-0639 (GEL), 2006 WL 547555, at *4 (S.D.N.Y. Mar. 6, 2006). Even if it were, without an underlying violation of those statutes, abettor liability cannot be established.

Plaintiff's fifth cause of action – "Failure to Take Steps to Prevent Discrimination, Retaliation and Harassment" – primarily charges Chase's HR department with failing to prevent harassment and discrimination by conducting bogus investigations and otherwise covering up her treatment. Am. Compl. ¶¶ 136-41. Chase did conduct prompt investigations after she raised her concerns; Plaintiff is simply critical that their conclusions were that Plaintiff's complaints were unsubstantiated. Given that the Court concludes that Plaintiff has failed to raise an issue of material fact regarding her underlying harassment, retaliation, and discrimination claims, her allegations regarding Chase's failure to intervene must fall too.

### B. Common Law Torts

Finally, Plaintiff's seventh and tenth causes of action are better construed as tort claims than as claims brought under Title VII or § 1981. Her seventh cause of action, for "Intentional and/or Negligent Infliction of Mental Physical and Emotional Distress," is best considered under the two separate torts of "intentional infliction of emotion distress" ("IIED") and "negligent

18

infliction of emotional distress" ("NIED"). The IIED tort "provides a remedy for the damages that arise out of a defendant engaging in 'extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society." *See Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 157 (2014) (quotation omitted). Based on the undisputed facts, a reasonable jury could not come to that conclusion here. *Cf. id.* at 161 (collecting citations for the proposition that "the failure to respond appropriately to complaints of harassment…will not be sufficiently egregious").

Second, in New York, the NIED tort is governed by the Workers' Compensation Law and so Plaintiff is barred from bringing a negligence claim against Chase here. *See Johns v. The Home Depot U.S.A., Inc.*, No. 03-CV-4522 (DC), 2005 WL 545210, at *8 (S.D.N.Y. Mar. 8, 2005), *aff'd,* 180 F. App'x 190 (2d Cir. 2006).

Plaintiff's tenth cause of action – for "Defamation of Character on the Basis of Race" – is best construed as either a variation of the dismissed harassment claims addressed above, or as a defamation claim under New York state law, in which case the claim is time-barred. Plaintiff's allegations center on the actions of Sullivan and Liasis, all of which occurred more than one-year prior to her filing of the complaint. *See* Am. Compl. ¶¶ 196-216; *see also Wellesley v. Debevoise & Plimpton LLP*, 346 F. App'x 662, 663 (2d Cir. 2009) (citing N.Y. C.P.L.R. § 215(3)).

* * *

Overall, the evidence is "so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 54 (2d Cir. 1998) (citations omitted). When an employer "provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination, the Court may conclude that no material issue of fact exists and it may grant summary judgment to the employer." *Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 493 (S.D.N.Y. 2010) (citations omitted). That is exactly the case here.

19

The undisputed facts, which are all supported by citations to evidence in the record, warrant a grant of summary judgment to Defendants on all counts, and the dismissal of Plaintiff's claims.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. This resolves Docket Number 89. The Clerk of Court is respectfully directed to close the case and enter judgment. A copy of this Order will be mailed to the *pro se* Plaintiff by Chambers.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 445 (1962).

SO ORDERED.

Dated: March 27, 2018
New York, New York

_____
ALISON J. NATHAN
United States District Judge